Filing # ███████ E-Filed 06/30/2021 12:09:50 PM

IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT
IN AND FOR VOLUSIA COUNTY, FLORIDA

ARCADIA SOLUTIONS, LLC &
CASSANDRA M. SMITH,

       **Plaintiffs,**

         **v.**

**BETHUNE COOKMAN UNIVERSITY,**

       **Defendant.**

_____/

Case No.: 2020-31481-CICI
Div. 22

## SECOND AMENDED COMPLAINT & DEMAND FOR JURY TRIAL

COME NOW the Plaintiffs, Arcadia Solutions, LLC and Cassandra Smith ("Plaintiffs"), by and through their undersigned counsel, and hereby file their Second Amended Complaint and Demand for Jury Trial against Defendant, Bethune Cookman University ("Defendant"), and allege as follows:

### PARTIES

1.     Plaintiff, Ms. Smith, is a resident of Blythewood, South Carolina and is over the age of 18 and is otherwise *sui juris* in all respects.

2.     Ms. Smith both owns and is self-employed by Co-Plaintiff, Arcadia Solutions, LLC.

3.     Arcadia Solutions, LLC is a corporation incorporated under the laws of the State of South Carolina with a principal place of business at 2 Rosemount Court, Blythewood, South Carolina 29016.

4.     Arcadia Solutions, LLC provides federal educational grant management and compliance and consulting services to colleges and universities across the United States such as Defendant.

5.      In this regard, Arcadia Solutions, LLC researches potential federal grant opportunities and assists colleges and universities in applying for these grants.

6.      Once the grant is secured, Arcadia Solutions, LLC monitors compliance per the grantor's spending and fund allocation requirements and prepares reports necessary for submission to the grantor to ensure that grant funds are being used for their intended purpose.

7.      Defendant is a private university located in Daytona Beach, Volusia County, Florida and it was established under the laws of the State of Florida.

8.      Defendant is a regular applicant for federal higher education grants afforded by the United States Department of Education ("DOE").

9.      Defendant is considered a grantee.

10.     Venue is proper as the cause of action accrued in Daytona Beach, Volusia County, Florida, the material witnesses to this litigation reside and/or work in Volusia County, Florida, and the Defendant maintains a university in Volusia County, Florida.

## STATEMENT OF CLAIMS

11.     On or about February 8, 2018, the Parties agreed to a 6-page contract. *See* Exhibit 1.

12.     Attached hereto as Exhibit 1 is a true and correct copy of the Parties' February 8, 2018, contract. *See* Exhibit 1.

13.     Defendant contracted with Plaintiffs to provide Defendant with consulting services relating to DOE Title III grants.

14.     These grants have a corresponding five (5) year program cycle; therefore, the Parties' contract was to last five (5) years as reflected in Paragraph 11. *See* Exhibit 1.

15.     Title III grants are earmarked for Historical Black Colleges and Universities (i.e., "HBCU") so that the HBCU can apply the funds to improve infrastructure and curriculum.

16.     Defendant is an HBCU.

17.     Defendant retained Plaintiffs to, *inter alia*, assist Defendant in seeking new grant funding opportunities and to monitor grantee compliance with the grantor's requirements.

18.     According to Paragraph 5 of the Parties' contract, Defendant agreed to pay Plaintiffs $5,000.00 per month for its services and an additional $8,000.00 per year to prepare and submit an annual evaluation regarding the progress of Defendant's Title III grant program.

19.     From February 8, 2018 (i.e., the contract start date), until Defendant's March 31, 2020 (i.e., termination of the contract), Plaintiffs performed all contracted for services and Defendant paid Plaintiffs $5,000.00 per month per the Parties' contract.

20.     In addition, in or about October 2018, Defendant paid Plaintiffs $8,000.00 for the preparation and submission of the 2018 annual evaluation and, in or about October 2019, Defendant paid Plaintiffs $8,000 for the preparation and submission of the 2019 annual evaluation, again, pursuant to the Parties' contract.

21.     Pursuant to Paragraph 14 of the Parties' contract, Defendant may terminate the contract but only after consultation with Plaintiffs and with the consent and approval of DOE's Title III Program Officer. *See* Exhibit 1.

22.     The DOE Title III Program Officer assigned to the grantee/Defendant was Darryl G. Davis, Senior Program Officer, U.S. Department of Education, Office of Postsecondary Education, Higher Education Programs, 400 Maryland Avenue SW Office 250-32, Washington D.C. 20202-5251, Office Phone: (202) 453-7582, Fax Number: (202) 453-3546, E-mail Address: Darryl.Davis@ed.gov.

3

23.     Pursuant to Paragraph 15 of the Parties' contract, if a dispute relating to the contract arose, the contract required the Parties to give sixty (60) days advance written notice of the nature of the dispute and the contract required the Parties to engage in a good faith dialogue to resolve the dispute. *See* Exhibit 1.

24.     On March 26, 2020, Defendant's Acting General Counsel, Valencia Gallon-Stubbs, Esq., sent Plaintiff the attached letter terminating the Parties' February 8, 2018, Agreement five (5) days notice (instead of the required 60 days notice) effective March 31, 2020. *See* Exhibit 2.

25.     Attached as Exhibit 2 to this Complaint is a true and correct copy of Attorney Gallon-Stubbs' termination letter. *See* Exhibit 2.

26.     The contract that Defendant terminated per Defendant's March 26, 2020, letter was the contract attached to this Complaint as Exhibit 1.

27.     The termination letter stated that Defendant was terminating Plaintiff's contract as a matter of convenience and discretion. *See* Exhibit 2.

28.     This reason for termination is false.

29.     The real reason for termination was that Plaintiffs opposed and objected to Defendant's gross mismanagement and misappropriation of federal DOE Title III grant funds.

30.     Defendant's reason for termination of the contract does not constitute legal cause justifying the contract's termination.

31.     Indeed, Defendant's reason for termination of the contract constitutes bad faith.

32.     Plaintiffs observed that Defendant was grossly misappropriating and mismanaging Title III grant funds and Plaintiffs objected to same.

33.     In or about August 2019, Plaintiffs learned that Defendant's Chief Financial Officer, John Pittman, was pressuring Defendant's Title III Director, Chelsea Shell-Washington, to use Title III funds to pay for Defendant's general operating costs.

34.     That is a violation of DOE Title III grant requirements.

35.     Therefore, on August 28, 2019, Ms. Smith sent Ms. Shell-Washington a text message objecting that Mr. Pittman was asking her to commingle grant funds and that such action constituted fraud on the federal government.

36.     On or about September 11, 2019, Ms. Smith spoke with Mr. Pittman over the telephone.

37.     During this conversation, Ms. Smith brought up the issue that Mr. Pittman was pressuring Ms. Shell-Washington to apply Title III grant funds to pay for Defendant's general operating costs.

38.     Ms. Smith objected to that telling Mr. Pittman that this was a violation of DOE grant rules and fraud on the federal government.

39.     Mr. Pittman told that Ms. Smith that he was going to continue instructing Ms. Shell-Washington to apply DOE Title III grant funds to Defendant's general operating costs.

40.     Ms. Smith replied that if that was the case, she would be compelled to report this to Mr. Davis.

41.     Mr. Pittman replied words to the effect, "then you just do that then."

42.     On or about September 18, 2019, Ms. Smith sent Ms. Shell-Washington an email telling her that she needed to inform Mr. Davis that Mr. Pittman was pressuring her to apply DOE Title III grant funds to Defendant's general operating costs.

43.     In addition, on or about October 1, 2019, Ms. Smith submitted to Ms. Smith-Washington her monthly formative evaluation and, in this evaluation, Ms. Smith indicated that fiscal management of grant funds was a concern. *See* Exhibit 3.

44.     For example, Ms. Smith noted that Defendant had failed to pay a construction contractor working on a Title III infrastructure project on a timely basis.

45.     Ms. Smith noted that Defendant renovated a kinesiology laboratory using Title III funds but when the project was completed, the kinesiology director was moved to a substandard laboratory.

46.     Ms. Smith noted that Ms. Shell-Washington's administration office was renovated using Title III funds; however, when that project was completed she was moved to another office which itself needed renovating.

47.     During Plaintiffs September 2019 site visit, Ms. Smith noted that Defendant was not keeping of the location of equipment purchased using Title III funds.

48.     During Plaintiffs' September 2019 site visit, Ms. Smith learned that Defendant removed approximately $650,000 from the Title III budget and applied these funds to the general operating budget and returned these funds to the Title III budget.

49.     This constitutes interfund borrowing which is a violation of DOE grant regulations.

50.     During this site visit, Ms. Shell-Washington shared an email with Ms. Smith written by Mr. Pittman to Defendant's President, E. Dr. E. LaBrent Chrite in which he said that a consultant who would be willing to report Defendant to the DOE should not remain employed with Defendant.

51.     This email constitutes direct evidence of retaliation.

52.     After Ms. Smith began voicing her objections to Defendant's mismanagement of funds described above, Defendant began retaliating against her by delaying payment of her contracted-for monthly compensation.

53.     Ms. Smith learned from Defendant's Director of Accounts Payable, Lillie Wiggins, that was holding up Ms. Smith's compensation.

54.     Ms. Smith's exchanges with Ms. Wiggins regarding Mr. Pittman holding up Ms. Smith's pay were via email.

55.     This continued until Plaintiff's March 26, 2020, termination.

56.     Defendant's termination did not comply with the pre-termination requirements within the contract.

57.     For example, Defendant failed to consult with Plaintiffs, as required by Paragraph 14, about its intent to terminate the contract prior to issuing the termination letter.

58.     Furthermore, Defendant failed to obtain the approval of DOE's Title III Program Officer, i.e., Mr. Davis, before terminating the contract which Defendant was required to obtain per Paragraph 14.

59.     On March 9, 2021, Mr. Davis sent Plaintiffs an email stating that Defendant did not confer with him regarding Defendant's termination decision. *See* Exhibit 3.

60.     Attached to this Complaint as Exhibit 4 is a true and correct copy of Mr. Davis' March 9, 2021, email. *See* Exhibit 4.

61.     Moreover, Defendant failed to give Plaintiffs sixty (60) days advance written notice of any disputes motivating its decision to terminate the contract and failed to engage in a pre-termination good faith dialogue with Plaintiffs to try to resolve any dispute as required by Paragraph 15.

7

62.     Plaintiffs have exhausted all administrative prerequisites and they have met all conditions precedent and they have filed this action within the applicable period of time.

63.     Therefore, this Complaint is timely filed.

64.     Plaintiffs have retained the law firm of Pérez Law, P.A. to represent them in this action and they have agreed to pay said law firm a reasonable fee for its services.

## COUNT I
## BREACH OF CONTRACT
### Florida Common Law

65.     Plaintiffs reallege here Paragraphs 1 through 64, above.

66.     The Parties entered into a valid contract on February 8, 2018.

67.     Defendant accepted the contract by performing the contract as evidenced by the fact that Defendants paid Plaintiffs the monthly and yearly contracted-for compensation.

68.     Furthermore, Defendant acknowledged that the contract existed between the Parties in Defendant's March 26, 2020, termination letter.

69.     Therefore, Defendant admitted through its course of conduct and through its March 26, 2020, letter that the Parties agreed to the February 8, 2018, contract and that they reached a meeting of the minds.

70.     Defendant materially breach the Parties' contract several ways including, but not limited to, the following:

      a.  Defendant breached Paragraph 14 by failing to consult with Plaintiffs about its decision to terminate the contract prior to terminating the contract;

      b.  Defendant breached Paragraph 14 by failing to obtain the DOE Title III Program Officer's (i.e., Mr. Davis) approval to terminate the contract before terminating the contract;

c.   Defendant breached Paragraph 15 by failing to give Plaintiff sixty (60) days advance written notice of any dispute warranting termination;

d.   Defendant breached Paragraph 15 by failing to engage in a pre-termination good faith dialogue with Plaintiff to try to resolve any alleged dispute; and

e.   Defendant breached the contract by terminating the contract without good cause and in breach of its duty of good faith and fair dealing by terminating the contract because of Ms. Smith's objections and opposition to Defendant's misappropriation of Title III grant funds.

**WHEREFORE**, Plaintiffs demand Judgment against Defendant for breach of contract and Plaintiffs demand the following:

a.   A declaration stating that Defendant breached the Parties' contract;

b.   Back pay due and owing for the value of the remainder of the contract's term;

c.   Pre-judgment interest;

d.   Post-judgment interest;

e.   Reinstatement of the contract;

f.   Attorney's fees;

g.   Cost; and

h.   All other relief that is just and equitable.

### COUNT II
### WHISTLEBLOWER RETALIATION
### 41 U.S.C. § 4712

71. Plaintiffs reallege here Paragraphs 1 through 64, above.

72. Ms. Smith was an employee under 41 U.S.C. § 4712(a)(1) of Arcadia Solutions, LLC.

73. Arcadia Solutions, LLC was the contractor and/or subcontractor under 41 U.S.C. § 4712(a)(1) of a federal grantee, i.e., the Defendant.

74. Ms. Smith had a reasonable belief under 41 U.S.C. § 4712(a)(1) that the grantee/Defendant in this case was grossly mismanaging and misappropriating federal Title III grant funds.

75. Ms. Smith disclosed this information and her belief to a person or body covered under 41 U.S.C. § 4712(a)(2)(g) namely to "[a] management official or other employee of the contractor, subcontractor, or *grantee* who has the responsibility to investigate, discover, or address misconduct." (emphasis added).

76. In this case that management official of the grantee was Ms. Washington.

77. By so disclosing this information, Ms. Smith engaged in protected whistleblower activity under 41 U.S.C. § 4712(a)(1).

78. Ms. Smith engaged in protected whistleblower activity from September 2019 through March 2020.

79. In response to Ms. Smith's protected whistleblower activity, Defendant delayed her compensation, sent at least one email to Defendant's President lobbying for her termination, and ultimately terminated her on March 26, 2020..

80. The short period of time between Ms. Smith's protected whistleblower activity and termination also evidences Defendant's retaliatory motivation for terminating Ms. Smith.

**WHEREFORE**, Plaintiffs demand Judgment against Defendant under unlawful whistleblower retaliation 41 U.S.C. § 4712(c) and Plaintiffs demand the following:

a. A declaration stating that Defendant engaged in unlawful whistleblower retaliation;

b.  Affirmative action to abate the reprisal;

c.  Reinstatement;

d.  Non-pecuniary compensatory damages for, *inter alia*, pain, suffering, and mental anguish;

e.  Pecuniary compensatory damages for, *inter alia*, back pay, back wages and compensation, and lost pay and lost wages due and owing;

f.  Reimbursement for the value of any lost employment benefits;

g.  Pre-judgment interest;

h.  Post-judgment interest;

i.  Reinstatement of the Parties' contract;

j.  Attorney's fees;

k.  Cost; and

l.  All other relief that is just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on and for all issues so triable.

Respectfully submitted this 29th day of June, 2021,

\s\ Daniel A. Perez____
Daniel A. Pérez, Esquire
Florida Bar No. 426903
Pérez Law P.A.
105 E. Robinson Street, Suite 530
Orlando, FL 32801
Tel: 407-815-2250
Fax: 407-815-2257
Email: dan@perezlawpa.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2021, I electronically filed the foregoing with the Clerk of

the Court using Florida's E-Portal Filing System which will send notice of electronic filing and, pursuant to Florida Supreme Court Administrative Order AOSC13-49, will complete service as required by Florida Rule of Judicial Administration 2.516 to Defendant care of its attorneys David Chauncey, Esq., david.chauncy@adblegal.com and Michelle Bedoya Barnett, Esq., michelle.barnett@adblegal.com.

\s\ Daniel A. Perez
Daniel A. Pérez, Esquire
Florida Bar No. 426903
Pérez Law P.A.
105 E. Robinson Street, Suite 530
Orlando, FL 32801
Tel: 407-815-2250
Fax: 407-815-2257
Email: dan@perezlawpa.com
Attorney for Plaintiff

THIS AGREEMENT ("Agreement") is made and entered into as of this 8th day of February, 2018, Bethune Cookman University with its principal place of business located at 640 Dr. Mary McLeod Bethune Boulevard Daytona Beach, FL  32114 and Arcadia Solutions ("Consultant"), as the principal place of business located 2 Rosemount Court Blythewood, SC  29016, and shall be effective as of February 8, 2018 (the "Effective Date").

## 1.0 Agreement Background

The purpose of this Agreement is to provide consultant services to support evaluation of Title III program, Federal grant writing and program development for Bethune Cookman University office of Title III and the Office of Sponsored Programs.

## 2.0 Scope

The services under this base contract cover consulting work for Bethune Cookman University for an annual evaluation of the Title III program and monthly assessment of all activities, feedback on requested modification, prospect identification, scheduling meetings, participation in solicitation meetings, proposal development, follow up, project research and other related activities as directed by Bethune Cookman University office of Title III and Sponsored Programs and as more fully described below.  Specific statements of work may be developed and amended as additional Exhibits to this contract as independent assignments materialize. Continuous Quality Improvement "CQI "Plan-Do-Study-Act" (PDSA) model that addresses the multiple levels of capacity and learning required for continuous improvement. This comprehensive approach will ensure that the activity goals of CQI are met: 1) build program capacity to collect and report data; 2) aggregate and organize program data to support improvements in operations and outcomes; and 3) provide intensive support and capacity building on data-driven decision-making. PDSA enables us to assess your capacity and plan for evidence-based data collection, collect data, analyze the data, and develop steps to act on lessons learned. The PDSA CQI process will be ongoing and, over time, increases both the quality of the program's work and the capacity of the organization. The PDSA CQI process will be utilized to evaluate inputs, examine program activities and processes, and analyze actual outcomes against projected and proposed outcomes to determine program effectiveness and improve service delivery. Data, including short-term outcomes outlined in the five-year plan as it relates to closely monitoring monthly "performance dashboards" that depict each program's progress against projected outcomes, using codes to help the program director and staff visualize each program's progress within the percentage of the operating year monthly process will provide ample program management and staff to course-correct, adjusting your activities or service delivery strategies to generate the outputs and outcomes projected through the five-year Title III program, which incorporates the Performance Standards and additional outcome targets. The proposed continuous quality improvement (CQI) Process will ensure that each program activity operates within a seamless continuum where the ultimate goal is achieved.

**EXHIBIT**

tabbies

/

**Key Tasks and Milestones**

- Conduct an annual evaluation of Title III program August or September of each year
- Ensure consistency in the implementation of risk assessment, monitoring, audit, problem resolution, develops supportive data for administrative feedback and instruction purpose
- Feedback and recommendations in response to complex inquiries regarding Title III and other Federal program policies and procedures
- Develop and recommend policies and provide technical assistance to the Title III program regarding monitoring procedures, application of program policy and conflicts in the area of responsibility
- Identify major prospects for funding of Bethune Cookman University as a component of the Office of Sponsored Programs.
- Provide workshops or seminars as requested
- Participate in solicitation meetings by phone and in person as requested
- Assist in the proposal development process by reading through RFPs and any/all accompanying resources or documents (e.g., sponsor's program website, application guide, etc.) as assistance to the Office of Sponsored Programs and Title III
- Participate in all strategy meetings as requested
- Assisting in drafting and obtaining letters of support from partner organizations to ensure appropriate Federal lingo is included
- Assist in the writing narrative for all assigned components. Examples: justification of need, background, program plan, organizational history/capacity, management plan, dissemination/research sharing plan, monitoring and evaluation plan, and narrative/information for appendices as necessary
- Assist in the researching books, periodicals, and other resources to develop "justification of need" and/or "background" sections
- Assist in the completion of Federal forms with required information (e.g., SF 424, contact info for Authorizing Official and person to be contacted regarding grant, key program personnel forms, budget information, etc.)
- Review prepared proposal application if provided in a timely manner

## 3.0   Other Support

Consultant will provide support for related but unanticipated projects of high-priority projects with pressing deadlines. Examples might include marketing and communications materials, reports, etc.

Consultant is strictly responsible for the manner and means of the work performed. Bethune Cookman University will identify a point of contact who will be responsible for monitoring Consultant's timely and satisfactory performance of the tasks or services under this Agreement.

### 4.0 Project Deliverables

The deliverables described hereafter (the "Deliverables") will be provided to the Director of Title III or her Designee in final form upon completion of the tasks described in this Agreement. Preliminary or draft versions of deliverables will be made available for review during the course of the project.

Deliverables will include:

- Annual Title III Program Evaluation
- Recommended Changes
- Response to all inquiries
- Scheduled meetings
- Written content for proposals
- Consultant reports

Items to be delivered personally and/or electronically and implementation as approved and requested by the Director of Title III.

### 5.0 Cost

In consideration for the Consulting Services to be performed by Consultant under this Agreement, Bethune Cookman University will pay Consultant a rate of $5,000.00 per month for the scope of work as set forth in this Agreement and $8,000.00 for annual evaluation September or October with a subsequent annual cost of living income as appropriate by the university and Federal standards.

Bethune Cookman University shall pay to Consultant all amounts due under this agreement, including all expenses, pursuant to submitted invoices on the first day of each month.

### 6. Non-Exclusivity

Consultant shall not be required to provide services exclusively to Bethune Cookman University during the course of performing this Agreement and, as such, consultant shall be permitted to perform the same or similar services for other entities subject to the Non-Competition and Conflict of Interest Sections of this Agreement.

### 7. Confidentiality

a. Proprietary and Confidential: includes any trade secrets (i.e. technical information; designs; marketing, selling and costing strategies; accounting information; customer lists and requirements) and all other confidential, proprietary, secret and sensitive information of the Bethune Cookman University, Customer or Third Party received in connection with this Agreement.

b. Marking; "Proprietary and Confidential" information shall be so marked, however, the failure by Bethune Cookman University to mark any information exchanged in relation to this Agreement shall not excuse Consultant from the duty to exercise the utmost care in handling the information and to also prevent disclosure to third parties.

c. Restriction on Use: Consultant shall not disclose or authorize any other party to disclose any "Proprietary and Confidential" information or other information covered by this Agreement.

## 8. Inspection

Bethune Cookman University shall be authorized to inspect the Consultant's work at any time. Upon inspection, Bethune Cookman University is entitled to reject any portion of the Work provided by the Consultant which Consultant shall repair, replace, or otherwise fix at its own expense. However, Bethune Cookman University is entitled to rely on Consultant's performance and shall not assume any liability in relation to exercising its right of inspection.

## 9. Representations and Warranties

**a. Compliance with Laws:** Consultant is currently in compliance with and will continue to comply with all applicable federal, state and local laws and regulations.

**b. No Conflicting Agreements:** Consultant represents that there are no contracts or other Agreements to which Consultant is a party, or by which Consultant is bound, that restrict, prohibit, or make unlawful Consultant's execution and/or performance of this Agreement.

**c. No Conflicts of Interest:** Consultant represents that (i) the work performed under this Agreement will not create an actual or apparent conflict of interest with any other work that it might perform, (ii) Consultant is not presently subject to any agreement with a competitor or potential competitor of Bethune Cookman University, (iii) Consultant is not subject to any statute, regulation or ordinance that would limit its ability to perform under this Agreement.

## 10. Changes

**a. Permitted Changes:** Bethune Cookman University shall have the right to make changes to the Work, including but not limited to, changes to the delivery or performance schedule, the quantity of services ordered, the Scope of Work, and the place of inspection, delivery, or acceptance.

## 11. Non-Solicitation

Consultant agrees to refrain from employing, seeking to hire, soliciting for hire and/or permit the employment of any person who was employed and/or affiliated with Bethune Cookman University in relation to Bethune Cookman University's performance of this Agreement. This restriction on Consultant's ability to solicit Bethune Cookman University s employees and contractors shall survive the termination and/or expiration of this Agreement for a period of a five-year Title III program cycle period.

## 12. Non-Competition

Consultant shall be free to accept other work during the term of this Agreement; however, such work shall not interfere with the provision of services hereunder.  Further Consultant shall not accept other work with any competitor of Bethune Cookman University that directly competes, or otherwise creates a conflict of interest, with

Bethune Cookman University in relation to this Agreement without Bethune Cookman University's prior written consent.

**13.  Indemnification**
Consultant shall indemnify, defend and hold Bethune Cookman University harmless from all loss, costs (including attorney's fees), or damages arising out of acts, misconduct, and/or omissions of its employees, agents, or representatives arising under or in connection with this Agreement.

**14.  Termination**
**a. Convenience:** Bethune Cookman University may terminate this Agreement after discussion with consultant and approval of Title III program officer.

**b. Default:**
**1. Event of Default:** If Consultant provides Bethune Cookman University any reason to believe it may not be able to continue performing, Consultant shall be in default unless Consultant remedies the default to the satisfaction of the Bethune Cookman University. In the event of a material failure to cure, or otherwise perform, Bethune Cookman University may terminate this Agreement immediately.

**2. Notice of Default:** Upon receipt of notice of complete or partial termination for default, Consultant shall: (i) stop affected Work, (ii) terminate all any related Consultant and/or supply agreements, (ii) complete performance of any portion of the Work that has not been terminated; and, (iv) take any other actions as may reasonably be required by Bethune Cookman University to expedite Consultant's discontinuation of performance under this Section.

**15.  Disputes**
**a. Good Faith Negotiations:** In the event of a dispute arising under this Agreement, the Parties agree to attempt to negotiate in good faith toward the resolution of the dispute within sixty (60) days of either Party's receipt of written notice indicating the grounds for the dispute.
**b. Litigation:** If the Parties are not able to resolve the dispute under Section 13(a) then either party may proceed with arbitration or choose to litigate in court of competent competition within the state of Florida under Florida laws. However, in all cases, Consultant shall be bound by decisions of the Customer to the same extent as the Bethune Cookman University.
**c. Duty to Proceed:** Unless terminated, Consultant shall continue to proceed diligently with the Work under this Agreement despite any dispute unless otherwise directed in writing by Bethune Cookman University.

**14. No Waiver**
The terms of this Agreement can only be waived by a writing that is signed by the Parties.

### 15.  Limitation of Liability

Claims for damages by Consultant arising under or related to this Agreement shall be limited to direct damages.  In no event will special, punitive, incidental, indirect, consequential or lost profit damages be available to Consultant with respect to any alleged breach or cause of action (whether sounding in tort, strict liability, or otherwise) in relation to Consultant's performance of the Work under this Agreement.

### 16. Assignment

Consultant shall not assign this Agreement without the prior written consent of the Bethune Cookman University, however, Bethune Cookman University may assign to its heirs, successors, or assigns upon providing the Consultant notice thirty (30) days prior to any such assignment.

### 17. Severability

If any provision of this Agreement is held to be invalid, void or unenforceable by a court of competent jurisdiction, the remaining provisions shall continue in full force without being impaired or invalidated.

### 18. Merger

This Agreement constitutes the entire Agreement between the Parties and, therefore, sets forth their entire rights, duties and obligations. Any prior agreements, promises, negotiations, or representations not expressly set forth in this Agreement are of no force and effect and shall be superseded by this Agreement.  Further this agreement shall govern all prior relationships and dealings between the Parties to this Agreement in relation to services performed.

Conditions in this document, as agreed upon by both parties, will be reviewed for consideration to continue at least six months prior to its date of termination.
I have read and understand the Independent Consultant Agreement.

Name _____      Date 02/08/18
                          Consultant

Name _____      Date _____
                    Director of Title III

Name _____      Date _____
              President Bethune Cookman University



# BETHUNE-COOKMAN UNIVERSITY

Founded in 1904 by Dr. Mary McLeod Bethune

Valencia Gallon-Stubbs, Esquire
Acting General Counsel

### OFFICE OF LEGAL AFFAIRS

Via Email: Arcadiasolutions01@gmail.com,
Regular Mail and Certified Mail, Return
Receipt Requested 7002 3150 0001 3717 8551

March 26, 2020

Ms. Cassandra M. Smith
Arcadia Solutions
2 Rosemount Court
Blythewood, SC 29016

**Re: Termination of Consulting Agreement – Effective March 31, 2020**

Dear Ms. Smith,

This letter serves as formal notification that Arcadia Solutions' Consulting Agreement with Bethune-Cookman University ("University" or "B-CU"), signed by you (whether in your personal capacity or on behalf of Arcadia Solutions), dated February 8, 2018 ("Agreement"), **is terminated effective March 31, 2020**. The termination is as a matter of convenience and at the discretion of the University pursuant to the terms of the Agreement. Please complete any and all work required for the year 2019 through this month, March 2020, regarding the scope of services under the Agreement. No invoices will be approved as submitted for work performed after March 31st.

As a consultant for the University, you and Arcadia Solutions had access to confidential and proprietary information of B-CU. This information included, but was not limited to, technical information, designs, marketing, selling and costs strategies, accounting/financial information, and other sensitive information. Under the terms of the Agreement you and Arcadia Solutions are required to keep all such information confidential and not to disclose it to third parties or use to the detriment of B-CU. Any unauthorized disclosure or use of University confidential information could lead to litigation against you and Arcadia Solutions.

**EXHIBIT**

tabbies®

2

To the extent that you and Arcadia Solutions have documents, records, information, software or other property of the University, demand is hereby made to immediately return those items to the University.  You should return the same to the undersigned's attention at: <u>Office of Legal Affairs, 640 Dr. Mary McLeod Bethune Blvd., Daytona Beach, FL 32114</u>.  **<u>Please ensure that any remaining or outstanding invoices for services provided are submitted on or before Tuesday, March 31, 2020 for processing</u>**.

We appreciate the service you and Arcadia Solutions have provided to and on behalf of the University.  We wish you the best in your future endeavors.

Sincerely,

Valencia Galton-Stubbs
Acting General Counsel

cc:     Karen Bearden, PhD, Executive Vice-President
        John C. Pittman, Vice President for Fiscal Affairs/CFO
        Chelsea M. Washington, Director of Title III and ARG

# INVOICE

| | |
|---|---|
| INVOICE Number | 32 |
| DATE | October 01, 2019 |
| ORDER NUMBER | |
| TERMS | Monthly |

| | |
|---|---|
| COMPANY | ARCADIA SOLUTIONS |
| ADDRESS | 2 Rosemount Court |
| CITY | Blythewood |
| STATE | South Carolina |
| ZIP CODE | 29016 |

| | |
|---|---|
| PHONE | (803)608-7442 |
| FAX | |
| CONTACT | Cassandra Smith |

| ITEMS | DETAIL | QUANTITY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | | | | $3,333.33 |
| | | | | |
| | | | | |
| | | | | |
| COMMENTS: | | | | |
| Consultant | | | SUBTOTAL | $3,333.33 |
| assessment | | | TOTAL | $3,333.33 |
| October 2019 | | | | |

Program performance measure analysis monthly for adherence with stated project objectives, outcomes and performance standards to improve program performance, where necessary, and for better service delivery and implementation strategies.  All data routinely reviewed and discussed with Title III director monthly.

ITEM of concern reporting of intern controls of fiscal management of funds.  Please provide documentation of steps in place to ensure funds provided are being expended on objectives and goals of the stated project.

*Cassandra Smith* Cassandra Smith    09/24/19

EXHIBIT

3

**Daniel Perez**

| | |
|---|---|
| **From:** | Cassandra Smith <arcadiasolutions68@gmail.com> |
| **Sent:** | Wednesday, June 23, 2021 5:15 PM |
| **To:** | Daniel Perez |
| **Subject:** | EMAIL FROM DARRYL DAVIS INDICATING MEETING NOT HELD |

From: **Davis, Darryl** <Darryl.Davis@ed.gov>
Date: Tue, Mar 9, 2021 at 3:53 PM
Subject: RE: Cassandra
To: Cassandra Smith <arcadiasolutions01@gmail.com>
Cc: Davis, Darryl <Darryl.Davis@ed.gov>

Hello Ms. Smith,

Thank you for your response,  Unfortunately I recall no meeting with you along with BCU.

Again there is no specifics to address this alleged issue.

Therefore, I would suggest you contact the I.G. office.

Kind Regards,

Darryl G. Davis

Senior Program Manager

United States  Department of Education

Office of Postsecondary Education

Higher Education Programs

400 Maryland  Avenue SW  Office 250-32

Washington D.C. 20202-5251

Office Phone:  (202) 453-7582



EXHIBIT
4

Fax Number:    (202) 453-3546

E-mail Address Darryl.Davis@ed.gov

**From:** Cassandra Smith <arcadiasolutions01@gmail.com>
**Sent:** Tuesday, March 9, 2021 12:58 PM
**To:** Davis, Darryl <Darryl.Davis@ed.gov>
**Subject:** Cassandra

Good morning Mr. Davis, what I was specifically referencing...the attorney for BCU eluded to your indication that you participated in a required meeting between BCU and myself.

Cassandra Smith